The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. First case today is Jonathan Monserrat v. Ron Newman, appeal number 21-1146. Attorney Gorin, please introduce yourself for the record and proceed with your argument. May it please the court, Richard Gorin for the appellant, Jonathan Monserrat. At this time, your honor, I would like to reserve three minutes for rebuttal. Yes, you may. Thank you. I'd like to start with a brief summary of the major points. The verified amended complaint plausibly alleges prima facie claims of both defamation and infringement. As to the defamation, there are three major points. Section 230 provides protection for online platforms as well as their editorial staff and agents from intermediary liability for defamation based on material hosted by third parties on their platforms. Second, the appellee Newman is not an internet intermediary. And as a third-party user of the Dreamwith website, he is the sole responsible provider of the actionable content published on that platform. Three, this court must hold Newman not entitled to immunity under section 230C1. As to copyright infringement, the 12B6 record does not establish with certitude a single one of Newman's purported adjudicative facts on which his fair use defense rests. On appeal, Newman argues the outcome determinative facts on his claim, they must be harvested not from what the complaint states, but from imagined admissions and from the complaint's failure to dispute those unpleaded outcome determinative contentions. Counsel, with respect to the defamation claim, what makes Newman an information content provider? He copied material from one website and as a user of the Dreamwith website, submitted that content to that intermediary platform for publication. There is no dispute. How did he create or develop that content in any way? He did not create the content. The content was created years before by a number of largely anonymous users of a different intermediary platform, the LiveJournal website. Those statements on the LiveJournal platform are no longer actionable. Newman contributed in whole or in part to what makes the content on the Dreamwith website actionable. He republished it. Yes, and under Massachusetts law, he is subject to liability for republication. But there is no injury for the common law to redress until Newman's republication is actually communicated to one or more persons. The cause of action only accrued when the intermediary Dreamwith website enabled the content that Newman submitted to be actually communicated to others. Mr. Gorin, I understood Judge Lopez to ask you how is Newman either the creator or developer of the information. I think you've explained why you agree he was not the creator, but I haven't heard you say whether he was the developer or not from your perspective. The Ninth Circuit material contribution test provides that where a user such as Newman didn't create the content, that he posted it on another website doesn't make him immune if he is responsible in whole or material part for what makes that content actionable. I may have missed something, but I'm still not hearing an answer to the question as to whether he was responsible for the development of the information. You said he wasn't responsible for the creation of it, but I think the question was, was he responsible for either the creation or development. Yes, he is responsible for the development because it was his actions and his actions alone that made the content on the Dreamwith website actionable. Merely by taking what was already created and fully developed and not changing it and putting it on another website, you call that development? Yes, Your Honor, I most certainly do. What precedent would support you in that assertion? As a matter of Massachusetts law, the statements on the LiveJournal, this is, as I understand it, Your Honor, a case of first impression. We're talking about a definition in Section 230c.1 and you're saying that it wasn't a creation, but it was a development. Then in response to my question of whether there's any case law that supports the assertion that it was a development, I think I hear you saying there's no case law, but you would say no case law either way. Yes, there are two things. One, it is undisputed that Newman is a user and not an Internet intermediary. His argument on appeal is that while he posted the material on Dreamwith under c.1, that information was provided by another content provider. But the original posters on the LiveJournal website had nothing whatsoever to do with putting that material on to that second website. They had no involvement whatsoever. Counsel, it seems to me you're really asking us to rewrite the statute. Your objection is he republished it, made it available to a wider audience. Understandably, that's very troubling to your client. But that act of republication, making it available to a wider audience, does not meet the terms of the act. As Judge Keada pointed out, he did not develop the material in any way by republishing it and making it available to a wider audience. You're asking us to rewrite the statute. Respectfully, Your Honor, that is not so. One moment. The content remains on the LiveJournal platform. It is no longer actionable under the single publication rule. Montserrat has no remedy for that continuing publication on that LiveJournal website. Newman, I'm not asking you to alter the statute. Under the statute, for him to be immune, the information that he indisputably posted on the Dreamwith website has to have been provided by another content provider. Let me ask you, it would be helpful if we had some more technical information. I apologize if my technical information isn't up to snuff. It seems to me that if I use Internet Explorer search engine, take Google for example, and I go out and put in a search term, that the Google program then searches for that term elsewhere on the web and then, quote-unquote, republishes it on my screen so I can see what it is. How do you differentiate what happens with a search engine from what the defendant did here? You know, it's taking something that's on another site and making it available on an additional site. The search engine analogy is different. The search engine, each individual website, as I understand it, allows the search engines to crawl the Internet and to copy their material. And then repost it so I can see it. Because when you click on it, you don't see it on Google. You go back, in this instance, to the LiveJournal website where the material is still contained. But on the search results page, that's a Google platform, isn't it? Yes. And I'm seeing it in those little boxes. If it's a very short thing, I see the whole thing. But that's a question as to the search engine is not being treated as the publisher. The search engine is not responsible in whole or in part for what makes that content. Sure, right. It didn't develop it and it didn't create it. So it gets a pass. But it seems to me what it's done, as you have said, is it's copied it from one place and put it on another where someone can see it, if I'm understanding it correctly. No, he did not make it available on the search engine. He took no longer actionable defamation by a series of people, copied the information and then republished it on a different website to a new and fresher audience under Massachusetts law that is actionable as a republication of libel. Newman is only exempt, he is only immune under the statute, if he is an internet intermediary and he is not. Or alternatively, as he claims on appeal, that the information that he posted was provided by another content provider. He is the only one who provides that content to the Dreamwith website. Let me ask you, counsel, you mentioned a couple of times already Massachusetts law. What's the particular authority that you're relying on under Massachusetts law here? Let me go to my brief, if I might. But it is the restatement of a contract. And Applebee versus Daily Hampshire Gazette 395 Mass. This is my brief at page 23 or 31 on the record. That a republisher of a defamatory statement is subject to liability as if he had originally published it. And that's the restatement second of torts, section 578. Let me ask you, if this court were to adopt your argument, in theory, everybody who republishes information, like in your case, would be liable, am I correct? Respectfully, your honor, no. If an internet intermediary quotes a defamatory statement, that intermediary is not responsible for what makes that content unlawful. If a non-intermediary, a user, as Newman in this case, if he's on an intermediary site and he merely comments on and restates the defamation, he may or may not be liable. The single most important distinction is whether the actor who republished qualifies as an internet intermediary or not. The purpose of section 230 of Congress was not to abrogate the common law liability for all liable published on the internet. For Newman's theory to be correct, somebody could copy a statement from a little neighborhood discussion group that says... Mr. Gorin, I think your time is up. Let me check and see if either of my colleagues have another question for you. I'm fine, thank you. Mr. Gorin, we'll wait. You have three minutes you've reserved for rebuttal. Thank you. Thank you, Mr. Gorin. At this time, please mute your audio and video. Attorney Booth, if you could unmute your audio and video. And introduce yourself on the record to begin, sir. Thank you. Good morning, your honors. Dan Booth for the appellate Ron Newman. May it please the court, this is actually a fairly simple case. The law clearly protects what Mr. Newman did under section 230. The fourth word of section 230C1 is user. Mr. Newman is undisputably a user of both the LiveJournal website and the Dreamwith website. And Mr. Montserrat would have you read that word out of the statute and read into the statute a requirement that only internet intermediaries are eligible for section 230 protections. That's not what the statute says and that's not the way it's been interpreted. The issue is whether he is a provider or user of an internet service and he absolutely is, undisputably. So this distinction that he's trying to read into the statute serves no purpose and is directly contrary to what the statute actually provides. There's no requirement that a website moderator act in a neutral fashion. There's no requirement that a website moderator act in a passive fashion. The website moderator is the unsung hero of the internet and Mr. Newman acted according to the statute. The statute, section 230, is what enables website moderators to serve their vital role. Without it, we wouldn't have these open forums where people can freely discuss things. When you read section 230, you start with the findings, you start with the policy sections. Section 230A walks through the need for this vibrant community discussion. Section 230B, the exact same thing. And so we know why Congress made this law so broad and provided very few exceptions to this immunity. Reading new immunities into the statute is directly contrary to that purpose. And so without justification, without precedent, there's really no good basis to do it. All that Mr. Newman is doing is republishing material that's been found repeatedly to be not a matter of developing content. Counsel, let me ask you a question. It's more procedural. But you mentioned that Mr. Newman is a republisher. Opposing counsel alleges that he's an intermediary. Isn't that a factual issue that at a 12B6 level should not be determined? It should rather be discovery and then a summary judgment motion? Well, the allegations and the complaints were that Mr. Newman was a user of the website service. So there's no dispute. There's no reason to throw this into discovery. Everyone agrees. There's no reason to dispute it. In fact, the whole point is that he used the service in a way that Mr. Montserrat disagrees with. But he was using it consistent with the statute. Counsel, to pick up on Judge Halpy's point, this is on the fair use issue. I mean, I think the appellant's complaint seems to be that in considering a motion to dismiss that the district court made judgments about the nature of the document. The purpose of the publication. Any decline in market value. Issues like that that are raised by fair use that he really, he was not entitled to make considering a motion to dismiss. What permitted the district court looking at the allegations and drawing inferences that are favorable to the appellant? What allowed the district court to make all those fair use determinations in considering a motion to dismiss? The fair use determinations were largely a matter of what appeared on the face of the use. He looked at the original use and he looked at the copy. And that's exactly what every judge does, making fair use determinations. And it's become fairly common for judges to make those as a matter of procedure. It's standard for judges to look at the allegedly infringed and infringing works. And as a matter of policy, it makes sense for courts to do so because fair use is a right under the statute. And so limiting that right, impinging on that right by burdening the fair users, forcing them to go through discovery in order to prove points that are really facially apparent makes no sense. The key issue is what is this work? That's what in Google the Supreme Court has made clear should be a focus of the fair use analysis. And so the nature of this work is a threat, a demand to other users in 2010 of the LiveJournal website to remove their posts or else Mr. Montserrat was going to, two days later, follow up with LiveJournal's administrator and pursue an abuse claim. Well, republishing that seven years later on another website makes it just a relic. It's no longer serving the same purpose. When Mr. Newman republishes that post along with every other post that had been in the Davis Square Neighborhood Community Forum, he wasn't taking the position that people needed to take down their posts. He was doing the exact opposite. He was repropagating it, republishing it. So it's facially apparent from the act that he was not serving the same purpose. He was instead preserving the document, preserving all of the website, and that's an undisputed point as well, preserving everything on the forum at a new site, keeping the community intact. So it was apparent from the allegations in the complaint and from the undisputed facts and from the record itself of what the work was, that there was this different purpose. It was apparent that there was no commercial purpose, just looking at the face of it. There's no ads on that LiveJournal page. Oh, excuse me, there's no ads on the DreamWidth page. DreamWidth doesn't take advertising. There is, however, on the LiveJournal page. So he had no purpose. He wasn't going to gain anything by reposting. Let me interrupt you there. You just said DreamWidth doesn't take advertising. Where's that in the complaint? That's not stated in the complaint. You can't tell looking at either work. I couldn't tell looking at either work whether DreamWidth takes advertising or not. They didn't run an ad, apparently, on the one page you've shown us. Right, or in any of the other pages that were taken into evidence. But we're interested in the ones that are in the complaint. We can look at the complaint. We can look at a document that's identified in a complaint if there's no dispute about its authenticity. But I don't see where I can find in either of those the fact that you just asserted that DreamWidth doesn't take advertising. There are two ways to answer that question. First, looking just at the specific, allegedly infringed work. That work, when republished on DreamWidth, there is no advertising on that page. That's in the appendix. Then... Let me even interrupt you on that. We can only look at what's alleged in the complaint. Does the complaint refer to the entire line? Or is just saying he republished the work? The complaint refers to the republication of the work. And there's no dispute that this is the only place where the work was republished. So we can look at where the alleged infringement happened. That's the nature of fair use analysis. What is the alleged infringement? In what fashion was it infringed? Courts look at that routinely. And so the other way that you can look at the question of what LiveJournal did or didn't do, what its policies were, you don't have to reach the question of the policies. All you have to know is that in connection with this particular work, there was no advertising revenue at issue because there's no ad there. But you can also know further because in the complaint, Mr. Montserrat points out the Wikipedia article that tells you all about DreamWidth and what their policies are and how they were different from LiveJournal. That is also subject to review by the court. And so there's no dispute about what the Wikipedia page about LiveJournal and the page about DreamWidth said. One about LiveJournal says that they took ads. The one about DreamWidth says they don't. So that's not a disputed fact. And there's no need even to reach that issue because the only issue is what was on the allegedly infringing work. There were no ads there. And there's no reasonable expectation. There's no standard expectation that there would be a commercial benefit for an unpaid moderator on a website. So it's not difficult to reach the question of whether this was commercial, especially because the crux, as we're told in Sony, of the profit-nonprofit distinction under fair use is not about whether there's money coming in or not. It's about whether the user is paying the customary price or not for the republication. Well, Mr. Montserrat never disputed that he posted this for free. Mr. Montserrat never contested that... Five minutes remaining. Five minutes. Thank you. And he never contested that there is no standard fee for website posts, for website comments. This is not something that people typically get paid to do. And you typically don't charge people to look at a website comment that you've made. That's not usual. Get that fact from him. That's a matter of judicial notice, I would submit. And that satisfies our judicial notice requirements? How? It's a standard. It's simply the way that the Internet works. As a matter of common use of the Internet, it's a matter of basic practice. So, if you have to reach the question of whether users typically get paid for having their posts republished, there's no reasonable expectation of that. That's the way we submitted it in the motion to dismiss. And the judge agreed that there was no commercial benefit. There was no customary price. And there was no allegation that there was a customary price. There's no reasonable argument that there's a customary price. So, you can find that, without such an allegation, that there's no basis to presume it. And certainly, it was contended that there was no customary price and there was no opposition on that point. We submit that the issue was waived. You present our choice as binary. In other words, either let 12b6 resolve this with taking judicial notice and other things, as you've said, or full-blown discovery. That's not actually the choice, is it? Isn't there... The district court would have ample authority to allow very targeted determination of a couple of those facts. It could allow you, for example, to submit a request to admit and the other side respond to it subject to sanctions. And then rule on a factual record. It wouldn't have to turn this whole case over to full discovery. And the question is why? Is there, in this case, a value to resubmitting it? And we don't see such a value. When we have a transformative use, when we have a non-commercial use, when we have no price for this work, so there's no economic effect, there's no economic harm as a matter of copyright law in republishing this work, because there was no expectation of economic benefit from him writing it. All he wanted to do was tell people to stop making comments about him and to take down their comments. And he made that threat in 2010. It didn't happen. The comments are largely still up there. And so their republication didn't harm him as a matter of copyright law. You know, the key, again, looking at the nature of the work, in Google, the court refers to Judge LaValle's article towards a fair use standard. And he talks about the different values of works. There are the great American novel, on the one hand, but a shopping list for copyright, or for that matter, a loan shark's note on a debtor's door that says, pay me by Friday or I'll break your goddamn arms. Those are all, as Judge LaValle puts it, equally protected by copyright. However, courts can make a reasonable distinction between them, not as a matter of aesthetics, but as a matter of categories. Loan shark's notes on debtor's doors, threats, demands, this deserves less protection. And so, a judge can look at that as well and say there's not an economic harm to that use as a categorical matter. This isn't the great American novel. It's just a threat. People don't get paid for this. Counsel, as a matter of fair use doctrine, the fact that this is clearly apparent on the face of the complaint, that this is, there's nothing remotely creative about this document. It's entirely factual, right? I mean, that's quite important. It's central, indeed. It's an informational work. And courts certainly, as a matter of standard, fair use analysis, see informational works as less critical, less central to the heart of copyright than fictional, creative, fantastical, imaginative works. This is a straightforward, direct threat. And so, there's no real substantial creativity there. There's enough to be protected by copyright. And there's not much to justify denying fair use. Mr. Booth, thank you. Your time is up. Does either of my colleagues have any further questions for Mr. Booth? No, thank you. Thank you, Mr. Booth. Thank you. At this time, would Attorney Gorin please unmute his audio and video and reintroduce himself on the record to begin. Richard Gorin for the appellate Jonathan Monserrat. On the defamation, that the user, Newman, that he's a user, does not mean he is not also a developer of the information. And it is his actions alone that are the subject of the defamation complaint. As to the copyright, the question of advertising or not, which is not in the record, it's not essential to Monserrat's claim. And even if it were admitted that the Dreamwith website does not get advertising revenue, is not dispositive of whether Newman stood to profit from his use. And not just in dollars and cents. And that the internet post lacks economic value is immaterial. It certainly is a factor to be considered when with all of the other relevant factors in the equitable assessment. But Folsom v. Marsh is on point. Regardless of whether there's any economic dollar value, the copyright monopoly of this two-paragraph internet post empowers the owner to restrict reproduction of his work. That, like other rights, it may be trumped in equity by a fair use is beside the point. Do you agree that the work here, had no economic value? Yes. And there's no potential market for it? Yes. And also that there was no profit or commercial gain by the defendant in republishing it? Your Honor, there is no obligation for the plaintiff to allege facts. My question is, do you agree with that? There was no economic or commercial gain to the republisher here? I do not know that. It is the defendant's obligation. It is his burden of proof to establish that his use was not commercial. You have some basis for wanting us to send this back and have a proceeding where it could end up with you having to pay attorney's fees if you didn't have any basis for contesting the fair use. Well, I suppose I guess I have to concede that point. I do not know what will happen and whether Mr. Newman can meet his burden of proof on the other predicates that his sole intended purpose was historical preservation. He just presumes that. And it is his burden to prove that his use had no effect on the value of the copyright to Montserrat. And here, the allegation is that he used that copyright as part of his campaign to defame the copyright owner. That certainly puts an issue where the Newman's sole intended purpose was historical preservationist. That's respectfully getting ahead of ourselves. Thank you. Thank you, Mr. Gore. Are there any further questions from Mr. Gore? No. Thank you, Mr. Gore. Thank you. That concludes the argument in this case. Attorney Gorin and Attorney Booth, you should disconnect from the hearing at this time.